**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WANDA BRENT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 C 0964** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Wanda Brent ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal and remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant raises the following issues: (1) whether the ALJ properly considered the opinions of Claimant's treating psychiatrists; (2) whether the ALJ erred in discounting the opinion of the state agency consulting  psychologist and giving significant weight to the state agency reviewing psychologist ; (3) whether the ALJ made a proper credibility finding; (4) whether the ALJ properly evaluated Claimant's post traumatic stress disorder and its vocational impact; and (5) whether the ALJ reasonably found that Claimant could perform a significant number of other jobs given Claimant's limitations in maintaining concentration, persistence, or pace.  For the following reasons the Court grants Claimant's motion to reverse or remand

the decision of the Commissioner, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

### A.     Procedural History

Claimant initially applied for DIB and SSI on December 1, 2005, alleging disability onset dates of March 6, 2002 and May 5, 2003, respectively.  R. 164-68; 169-71.  The Social Security Administration ("SSA") denied her applications on April 5, 2006.  R. 122-23, 129-34. Claimant then filed a request for reconsideration, which the SSA denied on May 31, 2006.  R. 124-25; 136-45. Thereafter, Claimant requested a hearing before an ALJ.  R. 146.

On January 14, 2008, Administrative Law Judge Michael G. Logan ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Rachael King.  R. 58-121. Claimant, Frank Mendrick, a vocational expert ("VE"), and Dr. Hugh Savage, M.D., a medical expert ("ME"), testified at the hearing.  R. 59.  On November 4, 2008, the ALJ issued a decision finding Claimant not disabled under the Social Security Act.  R. 15-31. Specifically, the ALJ found Claimant had the residual functional capacity to: lift/carry twenty pounds occasionally and ten pounds frequently; occasionally bend, stoop, crouch, crawl, climb ramps and stairs; never climb ladders, ropes, or scaffolds, or work at unprotected heights; work with a moderate limitation in concentration, persistence, and pace; work with a moderate limitation in social interaction with limited contact with supervisors and minimal contact with coworkers and no public contact; and perform unskilled, simple, repetitive tasks.

R.19-29. The ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 29-30.

Claimant then filed for review of the ALJ's decision to the Appeals Council, which denied Claimant's request on December 10, 2010. R. 1-3. Therefore, the ALJ's decision became the final decision of the Commissioner. Claimant subsequently filed this action for judicial review pursuant to 42 U.S.C. § 405(g). The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c) on August 25, 2011. Dkt. 16. An oral argument was held on July 10, 2012.

**B.     Hearing Testimony - January 14, 2008**

**1.     Wanda Brent - Claimant**

At the time of the hearing, Claimant was fifty-two years old and had completed education through the eleventh grade. R. 66. Claimant has past relevant work experience as a loader for UPS. R. 67. In addition to loading trucks, Claimant's prior work experience includes beauty product home sales. R. 69, 72-73. Claimant has not worked as a loader since 2002 when she suffered from a work-related injury. R. 67.

Claimant explained that she suffers from lower back pain that limits her standing, bending, and walking abilities and prevents her from sitting in one position for extended periods, or requires her to change positions or lie down. R. 73-74. At the time of the hearing, Claimant was alternating between taking Tramadol and Darvocet for the pain. R. 75. Claimant testified that the medications make her dizzy, sleepy, and forgetful. R. 80. Claimant alleged that she could stand for twenty minutes at a time for no more than an hour

a day and that she could only sit for about thirty minutes in an eight-hour day.  R. 81-82.

Claimant further testified that she suffers from depression after witnessing her brother's murder and her son's arrest.  R. 74.  Claimant explained that she sees a psychiatrist for her depression and takes medication.  R. 82.  Claimant stated that she is not happy, is forgetful, feels frustrated around people, has a tendency to become angry, and cries every other day.  R. 83-84, 94-95.  Claimant testified that she saw Dr. Buch every week to two weeks for over a year.  R. 91.

Claimant testified that in a typical day her daughter fixes her meals and prepares her medication.  R. 85.  For some time, Claimant and her sixteen-year old daughter sold Avon products from her home. R. 69.  Claimant would take orders and her daughter would prepare the orders for delivery.  R. 70.  Claimant stopped selling Avon products from her home the year before the hearing.  R. 86.  Claimant testified that she can't stay focused when she tries to read, bathes herself but does not bother with her hair, and naps during the day but has trouble sleeping at night.  R. 86-88.  She does not perform household chores or shopping. R. 89.  Claimant was last in contact with her friends more than five years before the hearing, though has contact with family members.  R. 88-89.

### 2.    Dr. Hugh Savage - Medical Expert

Dr. Hugh Savage testified as a medical expert.  R. 99-115.  The majority of Dr. Savage's testimony related to Claimant's physical impairments.  Dr. Savage opined that Claimant could perform light work.  R. 110.  Regarding the side effects of Claimant's medications, Dr. Savage testified that Claimant's pain medications were very unlikely to cause significant drowsiness and that Claimant's antidepressant medication was specifically designed to have the least effect on drowsiness.  R. 111.  Dr. Savage made clear that he is not a psychiatrist or a psychologist and was not able to render an opinion as to how Claimant's post traumatic stress disorder would affect her performance.  R. 113-14.  Dr. Savage opined that Claimant would not have a problem with performing simple routine tasks.  R. 115.

### 3.    Frank Mendrick - Vocational Expert

Frank Mendrick testified as a vocational expert.  R. 72-73, 116-19.  The VE classified Claimant's work experience in beauty product home sales as semi-skilled, light work and Claimant's prior work experience as a shipping company loader as unskilled, medium or heavy work.  R. 73.

The ALJ presented the VE with a detailed hypothetical person who was younger with Claimant's education and work experience.   This person could: lift twenty pounds occasionally, ten pounds frequently; occasionally bend, stoop, crouch, crawl; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; and never work at unprotected heights. This hypothetical person could work with: a moderate limitation in concentration, persistence, and pace, which the ALJ "peg[ged] at eighty-five percent"; a

moderate limitation in social interaction; minimal contact with supervisors and co-workers; and no public contact. R. 116-17. The VE testified that this hypothetical person could not perform Claimant's past relevant work. R. 117. The VE further testified that this hypothetical person could perform other unskilled, simple, repetitive, and light jobs that existed in the six-county Chicago area: general assembly (1500 jobs); inspection (800 jobs); and hand packaging (2000 jobs). R. 117-18.

The ALJ then modified the hypothetical to limit the individual to standing and walking only two hours and sitting for a maximum of two hours in an eight-hour day. R. 118. With these modifications, the VE testified that the hypothetical person could only perform part-time work and not engage in full-time competitive employment. *Id.* The VE further noted that if the hypothetical person in the first hypothetical could not maintain concentration, persistence, and pace for at least eighty percent of the workday, then that would preclude the hypothetical person from all work. *Id.* Finally, in response to questioning by the Claimant's attorney, the VE testified that no job would allow a person to take regular breaks beyond two rest breaks and one lunch break a day or to lie down at will. R. 119.

**C.      Medical Evidence**

**1.      Claimant's Physical Impairments**

Claimant does not challenge the physical RFC assessment.  Therefore, the Court provides a brief synopsis of Claimant's medical history as it relates to her physical impairments but focuses in more detail on the medical evidence regarding her mental impairments.

Claimant sought treatment from Dr. Jesse Wardlow, M.D. ("Dr. Wardlow"), from August 2000 to September 2005 for facial pain, sinus pain, dizziness, and nasal obstruction. R. 284-323.  Dr. Wardlow observed that despite treatment for Claimant's imbalance, dizziness, and facial pain with comprehensive medical therapy, her symptoms persisted.  R. 318; R. 298-308.

Claimant sought treatment from Dr. James Schiappa. M.D., S.C. ("Dr. Schiappa") in March 2002 after sustaining a work-related injury to her back.  R. 383.  Dr. Schiappa diagnosed Claimant with a lumbar spine strain; his treatment notes indicate that Claimant continued to experience chronic back pain through March 2003.  R. 359-435.  Dr. Schiappa also diagnosed a mild bulging of a disk in February 2005.  R. 539-40.

Upon Dr. Schiappa's referral, Claimant began physical therapy with Dr. Khaled Rashad, PT ("Dr. Rashad"), in April 2006.  R. 564.  Dr. Rashad completed an RFC on April 13, 2006, which focused primarily on Claimant's physical limitations but indicated that her experience with pain would frequently interfere with attention and concentration, and that emotional factors contribute to the severity of Claimant's symptoms.  R. 479.

Dr. Scott Kale, M.D., J.D., M.S, C.I.M.E. ("Dr. Kale"), a state agency examining

physician, completed an internal medicine consultative examination for the Bureau of Disability Determination Services on February 24, 2006. R. 347-56. Dr. Kale ultimately diagnosed Claimant with mild obesity, complaints of low back ache, complaint of psychiatric disease, and a history of acid reflux. R. 349-50. In March 2006, Dr. Sandra Bilinsky, M.D. ("Dr. Bilinsky"), a non-examining reviewer, reviewed Claimant's medical record on behalf of the SSA and completed an RFC. R. 450-57. Dr. Bilinsky concluded that Claimant was limited to medium work. R. 451-57.

## 2. Dr. Barbara F. Sherman, Psy.D., Licensed Clinical Psychologist - State Agency Examining Psychologist

Dr. Barbara F. Sherman, Psy.D. ("Dr. Sherman"), completed a psychological examination of Claimant on February 24, 2006. R. 352-56. Dr. Sherman observed that Claimant shifted often in her chair, was groggy during the examination, moved slowly, and appeared to be in pain. R. 353-54. Dr. Sherman further noted that Claimant reported pervasive signs of clinical depression due to extreme trauma after witnessing the beatings of her sons. R. 356. She opined that the cognitive screening indicated Claimant may suffer from some limitations in attention, conceptual thought, and judgment. *Id.* Dr. Sherman diagnosed Claimant with cognitive disorder, mood disorder due to medical condition, chronic pain with depression, and post traumatic stress disorder. R. 355-56.

### 3. Dr. Phyllis Brister, PhD. - State Agency Reviewing Psychologist

In March 2006, Dr. Phyllis Brister, PhD. ("Dr. Brister"), completed a Psychiatric Review Technique form and a Mental RFC Assessment. R. 436-49; R. 458-61. In the Psychiatric Review Technique, she noted that Claimant had a cognitive disorder, a mood disorder secondary to a general medical condition, and post traumatic stress disorder. R. 436-47. Dr. Brister opined that Claimant possessed a mild limitation in activities of daily living and maintaining social functioning and a moderate limitation in maintaining concentration, persistence, and pace. R. 446.

In the Mental RFC Assessment, Dr. Brister found Claimant has moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, and work in coordination with or proximity to others without being distracted. R. 458. Dr. Brister concluded that Claimant is capable of simple SGA. R. 460.

### 4. Dr. Piyush C. Buch, M.D. - Claimant's Treating Psychiatrist

Claimant sought treatment four times at the office of Dr. Piyush C. Buch, M.D. ("Dr. Buch"), between August 2005 and January 2006 for depression, indecision, sadness, and forgetfulness. R. 462-69. In a Mental Impairment Questionnaire dated April 13, 2006, Dr. Buch diagnosed Claimant with major depressive disorder with agitation and found that Claimant suffered from severely depressed psychomotor retardation. R. 470-71. Dr. Buch opined that Claimant's impairments would cause Claimant to miss more than three days of work per month. R. 473. Dr. Buch further opined that Claimant lacked the ability to deal with the stress of semiskilled or skilled work and would suffer from a frequent degree of

limitation with deficiencies in concentration, persistence, or pace. R. 475-76. Dr. Buch assessed Claimant's GAF at 50. R. 470.

In a second Mental Impairment Questionnaire dated July 26, 2007, Dr. Buch diagnosed Claimant with bipolar disorder, depression, and chronic back pain. R. 484. The notes reflect that Claimant suffered from crying spells and forgetfulness. R. 485. Dr. Buch affirmed his previous mental RFC findings that Claimant would miss more than three days of work per month and would suffer from a frequent degree of limitation with deficiencies in concentration, persistence, or pace. R. 490.

### 5.     Dr. Traci Powell, M.D. - Claimant's Treating Psychiatrist

Claimant presented herself to Dr. Traci Powell, M.D. ("Dr. Powell"), for psychiatric evaluation in December 2007. R. 570-71. Dr. Powell diagnosed Claimant with major depressive disorder with psychotic features. R. 571. At a follow-up appointment in January 2008, Dr. Powell again diagnosed Claimant with major depressive disorder with psychotic features in addition to post traumatic stress disorder and assessed a GAF of 45-50. R. 569. Dr. Powell noted that Claimant reported improvement but continued to have residual depressive symptoms as well as symptoms consistent with post traumatic stress disorder. *Id.*

## D.     The ALJ's Decision - May 14, 2009

Following a hearing and review of the medical evidence, the ALJ rendered an unfavorable decision upholding the denial of Claimant's application for DIB and SSI. R. 15-31. The ALJ reviewed Claimant's application under the familiar five-step sequential analysis. At step one, the ALJ found Claimant had not engaged in substantial gainful activity

since March 6, 2002, the alleged onset date. R. 17. At step two, the ALJ found Claimant had the following severe impairments: degenerative disc disease, gastroesophageal reflux disease, sinusitis, post traumatic stress disorder ("PTSD"), and depression. R. 18. At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 18-19.

The ALJ then considered Claimant's RFC and found Claimant capable of lifting/carrying twenty pounds occasionally and ten pounds frequently; occasionally bending, stooping, crouching, crawling, climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; never working at unprotected heights; working with a moderate limitation in concentration, persistence, and pace; working with a moderate limitation in social interaction with limited contact with supervisors and minimal contact with coworkers and no public contact; and performing unskilled, simple, repetitive tasks. R. 19-29.

In assessing Claimant's RFC, the ALJ found Claimant's impairments could reasonably be expected to produce the alleged symptoms, but that Claimant's statements "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." R. 28.

At step four, the ALJ found that Claimant is unable to perform any past relevant work. R. 29. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform. R. 29-30. Thus, the ALJ concluded Claimant is not disabled under the Social Security Act. R. 30-31.

## II. LEGAL STANDARDS

### A.     Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commission's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Under such circumstances, the district court reviews the decision of the ALJ.  *Id*.  The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A "mere scintilla" of evidence is not enough.  *Id*.; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded.  *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision.  *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).  It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility

determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id.*

## B. Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist

in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

## III. DISCUSSION

Claimant raises multiple issues for review. Specifically, Claimant argues: 1) the ALJ did not properly weigh the opinions of Claimant's treating psychiatrists; 2) the ALJ did not properly weigh the opinions of the state agency psychologists; 3) the ALJ's credibility finding was erroneous; 4) the ALJ found Claimant has the severe impairment of post traumatic stress disorder but did not properly assess the resulting functional impairments in the RFC or vocational impact; and 5) the ALJ did not set forth a supported rationale that Claimant could perform a significant number of jobs given the ALJ's finding that Claimant has moderate difficulties in concentration, persistence, and pace. The Court notes that the questions before the Court focus exclusively on Claimant's mental impairments: Claimant has not challenged the ALJ's assessment of her physical limitations.[1] The Court finds that the ALJ's decision was not supported by substantial evidence.

## A. The ALJ Erred in Evaluating the Medical Opinions of Claimant's Treating Psychiatrists and the State Agency Psychologists.

Claimant argues the ALJ erred in his evaluation of the medical opinions regarding her mental impairments. Specifically, Claimant argues the ALJ: erroneously discounted the opinions of Dr. Buch and Dr. Powell, Claimant's treating psychiatrists; erroneously rejected the report of Dr. Sherman, the state examining psychologist; and placed too much reliance

---

[1]Additionally, the Commissioner argues that the medical records sent to the Social Security Administration following the decision cannot be considered by this Court. Def. Br. 13-15; R. 577-82. This Court is confined to review the evidence the ALJ had at the time of his decision and determine whether the ALJ's decision was supported by substantial evidence.

on the opinion of Dr. Brister, the state agency reviewing psychologist. The Court agrees.

The Social Security regulations provide guidance on how an ALJ is to evaluate and weigh competing medical opinions. 20 C.F.R. § 404.1527. Generally, the opinions of treating physicians are afforded more weight than non treating physicians. *Id.* § 404.1527(c)(2). Where a treating source's opinion is well-supported by medical evidence and not inconsistent with other substantial evidence, that opinion will be given controlling weight. *Id.* When a treating source's opinion is not given controlling weight, the ALJ is to determine the weight to give the opinion by considering: the length of the treatment relationship; the nature and extent of the relationship; how well the opinion is supported with evidence or explanation; consistency with the record as a whole; the specialization of the doctor; and other factors brought to the attention of the ALJ. *Id.* § 404.1527(c)(2)-(6). Where an ALJ declines to give controlling weight to the opinion of a treating physician, the ALJ must give good reasons for his decision. *Id.* § 404.1527(c)(2); *see generally Clifford v. Apfel*, 227 F. 3d 863, 869-71 (7th Cir. 2000).

Regarding Dr. Buch, the ALJ made several errors which render his evaluation of Dr. Buch's opinions erroneous. First, the ALJ erroneously found that Dr. Buch gave a diagnosis of mild depression during Claimant's first three visits and only changed that diagnosis to major depressive disorder in light of the social security hearing. R. 26. A review of the notes confirms Claimant's position that this is factually erroneous: it is clear that the January 12, 2006 and August 23, 2005 diagnoses are both major depressive disorder and Dr. Buch is consistent in this respect. R. 463, 466. Moreover, to the extent the ALJ had difficulty reading Dr. Buch's handwriting, he had an obligation to clarify the record on this important point. *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004).

The ALJ also discounted Dr. Buch's opinion because the length of treatment does not support the existence of a highly debilitating mental impairment. While the frequency of treatment is a factor in determining how to weigh the opinion of a treating doctor, the ALJ may not rely on lack of treatment without exploring why treatment was infrequent. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). The ALJ may not play doctor and second guess whether the rate of treatment undermines the very diagnosis. *See Martinez v. Astrue*, No. 2:10 CV 370-PRC, 2011 WL 4834252, at *8 (N.D. Ind. Oct. 11, 2011) (holding that while an ALJ may consider conservative treatment in assessing the severity of a condition, an ALJ must consider explanations from the claimant as to why he or she did not seek more aggressive treatment).

The ALJ also found that Claimant's Avon business conflicted with Dr. Buch's assessment that Claimant has poor or no ability to maintain attention for a two hour segment. R. 27. Again, this is factually erroneous. Claimant's testimony was that she would "look at a order to see...if [her] daughter packed it correctly. Somebody will call, you know. It might take about a hour at the most, two. That's all I could do." R. 92. This testimony is consistent with Dr. Buch's assessment and certainly does not point out the "depth of the inaccuracy of the assessment of Dr. Buch" as the ALJ concludes. R. 27.

Further, the ALJ overreaches in calling Dr. Buch's opinion that Claimant has continual episodes of decompensation "hyperbole," R. 27, where the medical and other evidence reflects changes in medication and reported side effects. *See, e.g.*, R. 215, 353-54, 463, 569. In *Larson v. Astrue*, the Seventh Circuit made clear that the phrase "episode of decompensation" does not necessarily involve hospitalizations, but can be reflected in changes in medication and reports of side effects that interfere with functioning. *Larson*, 615 F.3d at 750. While the ALJ was not required to accept Dr. Buch's opinion that Claimant is experiencing a continual episode of decompensation, he was likewise not free to erroneously state that it was entirely unsupported and was "hyperbole."

Similar errors exist in the ALJ's discounting of the evidence from Dr. Powell. Claimant presented for an evaluation with Dr. Powell one month before her hearing day and had a follow up appointment four days after the hearing. R. 569, 570-71. In both meetings, Claimant reported that her medication was working or she was improving, but that she continued to have symptoms of depression. The ALJ gave little weight to Dr. Powell's

opinions because there is not a history of long term treatment. R. 27. The ALJ believed that Claimant was not honest with Dr. Powell by stating that she was not working despite the Avon business, though as the record reflects this work was minimal, from the home, and it was not necessarily an inaccurate statement. R. 27. After the meeting, Dr. Powell diagnosed Claimant with Major Depressive Disorder with Psychotic features, noted that Claimant's depressive symptoms affect her ability to function, and assessed a GAF of 45-50, which the ALJ acknowledged would indicate disabling mental dysfunction. R. 570-71; R. 27. The ALJ's assessment of Dr. Powell is confined to a supposed conflict regarding whether Claimant was dishonest when she said she was not working and the fact that Claimant only saw Dr. Powell twice. R. 27.

Dr. Sherman, a state agency reviewing psychologist, was also given very little weight by the ALJ. The ALJ stated that the problem he saw with Dr. Sherman's assessment was that Claimant was not under any treatment for the limitations alleged. R. 26. The ALJ discounted Dr. Sherman's opinion in large part because Claimant told her she was taking Zoloft that was prescribed in February 2006. R. 26. The ALJ writes: "What psychiatrist? She is not seeing psychiatrists from this record." *Id.* This is not correct. Claimant saw Dr. Sherman in September 2006. On January 17, 2006, Dr. Buch prescribed Zoloft to Claimant. R. 463. Again, the ALJ relies on erroneous factual conclusions in evaluating the medical opinions.

It is almost ironic, then, that the ALJ discounts the three psychiatrists or psychologists who saw Claimant in part because they only saw Claimant one to four times each, and then

gives significant weight to Dr. Brister, who never saw Claimant. R. 27. Additionally, Dr. Brister's assessment was completed in March 2006, indicating that he did not even review Dr. Buch's Mental Impairment Questionnaire (dated April 13, 2006), R. 470-77, Dr. Buch's second Mental Impairment Questionnaire (dated July 26, 2007), R. 484-91, or Dr. Powell's assessments in late 2007 and early 2008. R. 569-71.

At the end of the day, the record contains the opinions of four doctors regarding Claimant's mental health. Three had face-to-face interaction with Claimant and ultimately assessed more severe limitations than the ALJ and Dr. Brister–a doctor who never met Claimant, but upon whom the ALJ placed the most reliance. The treating psychiatrists independently diagnosed major depressive disorder, PTSD, and assessed GAFs of 45-60 which represents between serious and moderate symptoms. R. 470, 484, 569-71; *see Campbell v. Astrue*, 627 F.3d 299, at 307 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that Campbell was mentally capable of sustaining work.").

Given the multiple factual errors in the ALJ's various evaluations and the failure of the ALJ to consider the factors contained in 20 C.F.R. § 404.1527(c) to determine how much weight to afford non-controlling medical opinions, the Court finds the ALJ's evaluation of the medical opinions erroneous. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (noting that even where a treating doctor's opinion is not given controlling weight, the ALJ must determine what value the assessment merits); *Punzio v. Astrue*, 630 F.3d 704, 710-12 (7th Cir. 2011) (holding that factual errors in evaluating a treating doctor's opinion is reversible error).

As a result, the RFC is not supported by substantial evidence and the case must be remanded.

**B.      Upon Remand, the ALJ Should Reconsider Claimant's Credibility Regarding Her Mental Impairments.**

Claimant contends that the ALJ's credibility determination was erroneous. Because an ALJ is "in the best position to determine the credibility of a witness," a court reviews the credibility determination "deferentially." *Craft*, 539 F.3d at 678. A credibility determination will be overturned by a court only when it is "patently wrong." *Id.* In determining whether a credibility determination is patently wrong, the Court examines whether the ALJ's determination was reasoned and supported. *Jens v. Barnhart*, 347 F.3d 209, 213-24 (7th Cir. 2003). The ALJ must consider a number of factors imposed by the regulations, 20 C.F.R. § 404.1529(c), and must support a credibility finding with evidence in the record. *Smith v. Astrue*, 11 C 2838, 2012 U.S. App. LEXIS 5122, at *10-11 (7th Cir. Mar. 12, 2012). An ALJ may not ignore the claimant's statements regarding pain and other symptoms or disregard them merely because they are not substantiated by subjective medical evidence. SSR 96-7p, 1996 WL 3784186, at *1.

The ALJ in the case at bar included a "Credibility Determination Bridge" in which he concluded that while Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her statements about the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC. R. 28.

The Court cautions the ALJ that he may not evaluate a Claimant's credibility based

on the fact that her alleged symptoms are inconsistent with the RFC. The Seventh Circuit has recently admonished ALJs that such a process "backwardly 'implies that the ability to work is determined first and is then used to determine the claimant's credibility.'" *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). The ALJ's statement that Claimant's symptoms "are not credible to the extent they are inconsistent with the [RFC] assessment for the reasons explained above" comes dangerously close to falling in the ambit of the backwards analysis described by the Seventh Circuit.

Additionally, the Court cautions the ALJ that while Claimant's participation in the Avon business may be useful in evaluating her credibility, the Seventh Circuit has clearly cautioned against placing too much weight on a claimant's ability to do part time work. *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few hours a week and having the capacity to work full time."). Particularly given the flexibility of Claimant's schedule with Avon, and the assistance she received from her daughter, this endeavor should not be equated with an ability to work full time. *Diaz v. Astrue*, 499 F.3d 640, 648 (7th Cir. 2007) (noting the difference between an ability to engage in sporadic activities and being able to work eight hours a day, five days per week).

Given the high bar for overturning a credibility determination, the Court is hesitant to reverse the ALJ's credibility determination, particularly given that the ALJ considered a range of factors. This evidence included: Dr. Illuri, Dr. Sciappa' notes, Dr. Savage's assessment, Dr. Kale's report, Dr. Bilinsky's opinions, and Claimant's Activities of Daily

Living. R. 28-29. However, the ALJ relied on several perceived inconsistencies that, as explained above, are simply not inconsistencies. In light of the remand and the fact that the ALJ's credibility determination relied on several factual errors, the Court instructs the ALJ to reconsider Claimant's credibility as it relates to her mental impairments. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("[O]rdinarily a trier of fact's credibility finding is binding on an appellate tribunal. But not if the finding is based on errors of fact or logic.").

**C.    Upon Remand, the ALJ Should Include Any Limitations Related to Claimant's PTSD, Particularly Flashbacks.**

The ALJ found that Claimant has the severe impairment of PTSD. Claimant argues that despite this finding, the ALJ failed to put forth a proper analysis of the condition and include appropriate limitations in Claimant's RFC.

Notably, Dr. Savage, the ME, was not able to opine as to the effect of Claimant's PTSD. Claimant argues that the ALJ erred in not acknowledging or resolving this testimony despite accepting other testimony from Dr. Savage. Upon questioning by Claimant's attorney, Dr. Savage testified: 1) it was not his impression that Claimant was constantly preoccupied; 2) that impairments from flashbacks would be "between her and her psychiatrist, and psychologist"; 3) that the notes from Dr. Buch did not reflect anything about flashbacks; and 4) that if crying spells or flashbacks went untreated, they could interrupt Claimant's work. R. 113-14. Claimant cites to one of Dr. Powell's treatment notes which reflects Claimant's self report that she has flashbacks approximately once per week. R. 569.

The ALJ is required to include in the hypotheticals posed to the VE all limitations supported by the medical record which the ALJ includes in the RFC. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). The ALJ's hypotheticals in this case included all of the limitations he eventually included in the RFC, so he did not err in failing to include additional limitations in the hypothetical. However, as discussed above, the Court finds that the RFC was not supported by substantial evidence. Upon remand, after reconsidering what weight to afford the opinions of the various doctors and assessing a new RFC, the ALJ should seek vocational expertise as appropriate and must include all limitations supported by the medical record. *Id.*

**D.      The ALJ Failed to Set Forth a Supportive Rationale that Claimant Could Perform Other Jobs.**

Similarly, given the Court's finding that the ALJ erred in evaluating the opinions of the various medical doctors, the question of whether Claimant could perform other jobs is premature. However, in the interest of ensuring a comprehensive process upon remand, the Court finds the following points worth noting.

If the RFC following the remand includes a similar limitation of "a moderate limitation in concentration, persistence, and pace," the ALJ must explain how that limitation is included in the RFC. While questioning the VE during the hearing, the ALJ limited a hypothetical individual to being able to maintain concentration, persistence and pace for, alternatively, sixty percent and eighty-five percent of the workday. R. 117-18. At eighty-five percent, there was work the person could perform; at sixty percent, there was no work.

*Id.*  The VE testified that a person must be able to maintain concentration, persistence, and pace eighty percent of a day in order to maintain employment.  R. 118.  In his decision, the ALJ limits Claimant to "work with a moderate limitation in concentration, persistence and pace," R. 24-28, and  cites the jobs available to someone who is able to maintain concentration, persistence, and pace for eighty percent of the day.  R. 30.  However, the ALJ did not build a bridge between the "moderate limitation" and his decision to rely on the jobs available for someone who can maintain concentration, persistence and pace for eighty-five percent of the day, particularly given that eighty percent is the determinative bar.  R. 118. The Court reminds the ALJ that he must build a logical bridge between the limitations he finds and the VE evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant.  *Scott*, 647 F.3d at 740 ("We therefore must conclude that the ALJ failed to build the requisite 'logical bridge' between the evidence and her conclusion'").

# IV. CONCLUSION

For the reasons set forth in this opinion, the Court grants Claimant's motion to reverse and remand the decision of the Commissioner, denies the Commissioner's motion to affirm the Commissioner's decision, and remands to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED THIS 17th DAY OF JULY, 2012.

_Morton Denlow_
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
The Law Offices of Barry A. Schultz, P.C.
1601 Sherman Avenue, Suite 510
Evanston, IL 60201

**Counsel for Plaintiff**

Jeffrey M. Hansen
Assistant United States Attorney
219 South Dearborn Street
Chicago, IL 60604

Cynthia A. Freburg
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, IL 60606

**Counsel for Defendant**